ANDREW T. KRAMER, State Bar No. 321574
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: akramer@wsgr.com

Attorneys for Non-Parties
GOOGLE LLC AND ALPHABET INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KELLER WILLIAMS REALTY, INC., MAKAI SOUTHEAST, LLC (d/b/a KELLER WILLIAMS REALTY WELLINGTON), EQUESTRIAN PALMS, LLC,<br><br>　　　　　Defendants. | MISC. CASE NO.: 24-80009<br><br>Underlying Case:<br>Civil Case No.: 9:23-cv-81393-RLR<br>(S.D. Fla., West Palm Beach Division)<br>("Real Estate Litigation")<br><br>**NON-PARTIES GOOGLE LLC AND ALPHABET INC.'S JOINT NOTICE OF MOTION AND MOTION TO QUASH SUBPOENAS AND MOTION FOR ENTRY OF PROTECTIVE ORDER** |

NON-PARTIES GOOGLE LLC AND ALPHABET INC.'S
JOINT NOTICE OF MOTION AND MOTION TO QUASH
SUBPOENAS AND FOR ENTRY OF PROTECTIVE ORDER

MISC. CASE NO.: 24-80009

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at a hearing date and time to be determined by the Court, Non-Parties Alphabet Inc. and Google LLC (together, "Google") will and hereby do move in the United States District Court for the Northern District of California, under Federal Rules of Civil Procedure 26 and 45, for (1) an order quashing subpoenas served on them (captioned under an action pending in the Southern District of Florida); and (2) a protective order directing that the subpoenaing party, Jeffrey Isaacs, may not serve further subpoenas on Google in that underlying action without first obtaining leave of court.

This Motion is based on the Memorandum of Points and Authorities submitted herewith, the accompanying Declaration of Andrew T. Kramer and exhibits thereto, any Reply Memorandum or other papers submitted in connection with the Motion, and any information presented at argument.

Respectfully submitted,

Dated: January 17, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Andrew T. Kramer*
    Andrew T. Kramer
    akramer@wsgr.com

Attorneys for Non-Parties
GOOGLE LLC and ALPHABET INC.

# MEMORANDUM AND POINT AND AUTHORITIES

## INTRODUCTION

Non-Parties Google LLC and Alphabet Inc. (together, "Google") respectfully move the Court for a protective order quashing two deposition subpoenas—captioned under a case in the Southern District of Florida that does not involve Google—and precluding the subpoenaing party, Jeffrey Isaacs, from issuing additional subpoenas to Google without first obtaining leave of court. Two and a half years ago, Mr. Isaacs sued Apple Inc. in this District for alleged RICO and antitrust violations. Judge Chen granted Apple's motion to dismiss, and Mr. Isaacs appealed. Shortly before the Ninth Circuit affirmed the decision in fall 2023, Mr. Isaacs started accusing Google of conspiring with Apple to deprive him of income from a website he owns (OkCaller.com), claiming that his website got "shut off" in Google Search, demanding an investigation, and alleging that Google committed criminal witness tampering.

Mr. Isaacs is now engaged in litigation over the unconsummated sale of his Florida home in February 2023 (the "Real Estate Litigation"). The buyers sued Mr. Isaacs in Florida state court after he failed to close on the transaction. In response, Mr. Isaacs filed the Real Estate Litigation against them in the Southern District of Florida, asserting that the war in Ukraine was a force majeure event that allowed him to get out of the home sale.

Google is not a party in the Real Estate Litigation, and Mr. Isaacs's complaint in that case does not mention OkCaller.com or Google. Nevertheless, under the Real Estate Litigation caption, Mr. Isaacs has sent six subpoenas to Alphabet and its subsidiary, Google, over the past month, seeking information about his prior grievance with Google over OkCaller.com's performance in Google Search—information that is irrelevant to the Real Estate Litigation and the sale of Mr. Isaacs's home. Indeed, Mr. Isaacs's letters accompanying each of the subpoenas he has issued say that they are "in reference to the ongoing legal matter" between Google and "OkCaller.com." (Although in reality, there is no such legal proceeding between Google and OkCaller.com.)

Setting aside the fact that Mr. Isaacs's accusations about criminal witness tampering are meritless, his subpoenas to Google in the Real Estate Litigation constitute an abuse of the Southern District of Florida's subpoena power and a violation of Fed. R. Civ P. 45(d)(1). Google

therefore respectfully asks this Court to quash the subpoenas from Mr. Isaacs, and to require him to obtain leave of court before using the Real Estate Litigation to serve additional subpoenas on Google LLC or Alphabet Inc.[1]

## BACKGROUND

**I.   Mr. Isaacs Attempted to Drag Google Into His Failed Lawsuit Against Apple**

In July 2021, Mr. Isaacs sued Apple in this District, alleging RICO and antitrust claims. *See Coronavirus Rep. et al. v. Apple Inc.*, No. 21-CV-05567-EMC (N.D. Cal.). Judge Chen dismissed that case on the pleadings. *See Coronavirus Rep. et al. v. Apple Inc.*, No. 21-CV-05567-EMC, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021). Mr. Isaacs appealed and, on November 3, 2023, the Ninth Circuit affirmed the dismissal. *See Coronavirus Rep.; CALID, Inc. v. Apple, Inc.*, 85 F.4th 948 (9th Cir. 2023).

Through the same counsel now representing him in the Real Estate Litigation, Mr. Isaacs sent a letter to Google in August 2023 threatening to move for emergency injunctive relief. Declaration of Andrew T. Kramer ("Kramer Decl.") at ¶ 2. Mr. Isaacs accused Google of somehow conspiring with Apple to deprive him of income from OkCaller.com—income that was supposedly the "primary source of [his] funds" for litigating *Apple*—by allegedly tanking OkCaller.com's performance in Google Search. *Id.* Ex. A at 1. He claimed that Google's supposed actions amounted to criminal witness tampering under 18 U.S.C. § 1512. *Id.* In October 2023, Mr. Isaacs, through the same counsel, sent another letter, again accusing Google of witness tampering. *Id.* ¶ 3. He demanded an investigation into the matter, preservation of evidence, and identification of Google personnel "for possible subpoena in" the *Apple* case. *Id.* Ex. B at 2. Google explained to Mr. Isaacs (in November 2023) that his claims of any wrongdoing by Google and his threats of litigation were unfounded. *Id.* Ex. C.

---

[1] Google has filed this Motion in this Court because it is the "court for the district where compliance is required" under Fed. R. Civ. P. 45(d)(3); *see, e.g.*, *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 630 (C.D. Cal. 2018) (collecting cases holding that the district of compliance for Rule 45 subpoena is where a nonparty corporation is headquartered). If the Court concludes that transfer to the Southern District of Florida would be appropriate under Fed. R. Civ. P. 45(f), Google would consent to the transfer.

NON-PARTIES GOOGLE LLC AND ALPHABET INC.'S
JOINT NOTICE OF MOTION AND MOTION TO QUASH
SUBPOENAS AND FOR ENTRY OF PROTECTIVE ORDER

-2-

MISC. CASE NO.: 24-80009

## II. Mr. Isaacs Is Currently Litigating in Florida Over the Sale of His Home

In February 2023, Mr. Isaacs contracted to sell his home in Florida. *Isaacs v. Keller Williams Realty, Inc. et al.*, No. 23-cv-81393-RLR (S.D. Fla.), Dkt. No. 25 ¶ 19. When Mr. Isaacs failed to close on the transaction, the buyers and listing agent sued him in Florida state court. *Id.*, Dkt. No. 25 ¶ 21. Mr. Isaacs responded by filing the Real Estate Litigation against those same entities—as well as another company Isaacs thought was involved (Keller Williams Realty, Inc.)—in the Southern District of Florida, alleging claims for violation of the Telephone Consumer Protection Act, RICO, the Fair Housing Act, antitrust law, breach of contract, and abuse of process. *Id.*, Dkt. No. 25.

In the Real Estate Litigation, Mr. Isaacs points to the war in Ukraine as the justification for why he did not close on his home's sale. His complaint references a "Force Majeure" clause, which he alleges "allow[ed] either party to exit the contract [for the sale of his Florida home] if 'disrupted' by 'an act of war.'" *Id.*, Dkt. No. 25, ¶ 79. According to Mr. Isaacs, the defendants in the Real Estate Litigation "filed a false lawsuit [in Florida state court] claiming there was no war in the Ukraine ('there is no *force majeure* event.')," which Mr. Isaacs contends amounts to a breach of contract and abuse of process. *Id.*, Dkt. No. 25, ¶ 90. The defendants have moved to dismiss the case. *Id.*, Dkt. Nos. 29, 38, 39.

## III. Mr. Isaacs Is Trying to Use the Real Estate Litigation to Revisit His Accusation of Wrongdoing by Google Regarding OkCaller.com

So far, Mr. Isaacs has issued six subpoenas to Google under the Real Estate Litigation caption. Each subpoena seeks information about Google's supposed removal of OkCaller.com from Google Search.

<u>First two subpoenas on December 11, 2024</u>. Mr. Isaacs initially served two subpoenas on Google LLC: one for testimony at a trial or hearing and one for production of documents. Kramer Decl., ¶ 5 & Exs. D, F. Google served objections, noting that both subpoenas were invalid and improper. *Id.* Exs. E, G. For example, no witness fee was paid for the testimony subpoena, and there was no trial or hearing in the Real Estate Litigation set for the date of compliance. *Id.* ¶ 6. Google also objected to the document subpoena on numerous grounds, including because it failed

to enumerate *any* document requests. *Id.* Ex. G. In its objections to both subpoenas, Google said that it would be forced to seek a protective order in this Court if Mr. Isaacs continued to seek information irrelevant to the Real Estate Litigation. *Id.* ¶¶ 7, 9 & Exs. E, G.

Next two subpoenas on December 20, 2024. Mr. Isaacs next served two subpoenas on Alphabet Inc.: one for testimony at a trial or hearing and one for documents. *Id.* ¶ 10 & Ex. H. Among other reasons, Alphabet objected to the testimony subpoena because Alphabet is not the proper subject of a subpoena seeking information regarding its subsidiary's (Google LLC's) internal operations. *Id.* Ex. I. It also objected that the subpoena was invalid because it demanded appearance at a trial or hearing when none had been set in the Real Estate Litigation for the date of compliance. *Id.* Alphabet also objected to the document subpoena for numerous reasons, including that the information it sought is irrelevant to the Real Estate Litigation. *Id.* Ex. J. Both sets of objections again made clear that Google would have to seek a protective order if Mr. Isaacs continued to send improper subpoenas. *Id.* ¶¶ 13, 15 & Exs. I, J.

The two January deposition subpoenas. On January 4, 2024, Mr. Isaacs emailed courtesy copies of two more subpoenas to Google's counsel, without formally serving them on Google. *Id.* ¶ 18. Both subpoenas are for deposition testimony: one to Alphabet Inc. and one to Google LLC. *Id.* The Alphabet subpoena purports to compel a witness to appear at a deposition in Miami on January 22, but notes that "[r]emote deposition is allowed." *Id.* Ex. K. The Google subpoena purports to compel a witness to appear at a deposition in Palo Alto on February 5. *Id.* Ex. L.

Neither subpoena sets forth topics for testimony. Instead, each refers to an accompanying "instruction letter." *Id.* ¶ 20 & Exs. K, L. The "instruction letters" to Alphabet Inc. and Google LLC are substantively identical, requesting testimony related to an "ongoing legal matter" regarding "the alleged termination of Google LLC's reverse phone search partnership with OkCaller.com." *Id.* ¶ 21 Exs. M at 1, N at 1. Notably, the letters effectively confirm that the subpoenas are a continuation of Mr. Isaacs's campaign against Google from his *Apple* case, citing his August 2023 correspondence about OkCaller.com and discussing his "concerns" about criminal tampering under 18 U.S.C. § 1512. *Id.* The potential testimony topics mentioned in the letters include:

- "[T]he decision-making process regarding OkCaller.com's status in Google's reverse phone search algorithm."
- "[F]inancial estimates of payments OkCaller generated that were directed to Apple";
- "[D]ocumentation of any other agreements, contracts, or de facto relationships with Apple that could impact OkCaller's operations and/or rankings . . . including, but not limited to, communications channels discussing website security, privacy, reputation, affiliations, IP, or other matters"; and
- "Google's ten largest phone search websites by organic referral volume."

On January 9, 2024, at Mr. Isaacs's request, Google's counsel met and conferred by phone with Mr. Isaacs and his counsel regarding the deposition subpoenas that Mr. Isaacs had emailed to counsel but not yet served. *Id.* ¶ 29. During that discussion, Mr. Isaacs and his counsel stated that they are focused on securing testimony on two issues: (1) why OkCaller.com got "shut off" on Google Search; and (2) whether and how the performance of OkCaller.com (or any of Mr. Isaacs's other websites) in Search will improve in the future. *Id.* ¶ 29. When asked about how those issues are relevant to the Real Estate Litigation, Mr. Isaacs's sole rationale was that the issues supposedly pertain to the force majeure clause in the sale contract for his Florida home. *Id.* ¶ 30. Further, Mr. Isaacs and his counsel asserted several times that Google would be in contempt if it does not comply with the subpoenas, and repeatedly threatened to sue Google if it does not provide testimony on the two OkCaller.com issues. *Id.* Google informed Mr. Isaacs and his counsel that Google would move for a protective order once the subpoenas were actually served. *Id.*

On January 12, 2024, Mr. Isaacs served the Google deposition subpoena, along with a subpoena for documents. *Id.* ¶¶ 23, 25.[2] Google served its objections on January 16, reiterating that the deposition topics are irrelevant to the Real Estate Litigation and that Google is left with no choice other than seeking a protective order. *Id.* ¶ 24 & Ex. P. Indeed, the defendants in the

---

[2] As of today, the Alphabet deposition subpoena does not appear to have been served. Google has included that subpoena in its request for relief here because, during the January 9 meet and confer, Mr. Isaacs said that both deposition subpoenas would be served, and the dispute regarding the Alphabet deposition subpoena—which is substantively identical to the Google subpoena and sets a deposition for January 22—is ready to be adjudicated. Of course, if the Alphabet deposition subpoena is ultimately not formally served, Google will withdraw its request for relief as to that subpoena.

Real Estate Litigation have the same view of Mr. Isaacs conduct: in their Motion to Stay Discovery (filed on January 8, 2024), the defendants called out Mr. Isaacs's improper subpoenas to Google: "It is obviously improper for plaintiff to be spraying out subpoenas across the federal court system using the caption of this case but involving other matters." *Isaacs v. Keller Williams Realty, Inc. et al.*, No. 23-cv-81393 (S.D. Fla.), Dkt. No. 61 at 3.

## ARGUMENT

Mr. Isaacs's subpoenas should be quashed because they seek information that is irrelevant to the Real Estate Litigation. And to stop Mr. Isaacs from continuing to serially issue improper subpoenas to Google LLC or Alphabet Inc., he should be prohibited from serving further subpoenas on Google in the Real Estate Litigation without first obtaining leave of court.

### I.     Legal Standard

A subpoena must be quashed when it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Under Rule 45(c)(3)(A), "an evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Natera, Inc. v. CareDx, Inc.*, No. 23-MC-80117-LJC, 2023 WL 3763808, at *4 (N.D. Cal. May 31, 2023). Critically, under Rule 26, a party is entitled to seek only nonprivileged information "that is ***relevant*** to any party's claim or defense and ***proportional*** to the needs of the case." Fed. R. Civ. P. 26(b) (emphases added). Accordingly, courts routinely quash subpoenas where the information sought is irrelevant: particularly where, as here, it is "patently irrelevant" and "totally untethered from" the matters at issue in the underlying action. *Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, No. 17-CV-05806-RS (RMI), 2021 WL 3773607, at *4 (N.D. Cal. Aug. 25, 2021).

### II.    The Subpoenas Seek Irrelevant Information and Should be Quashed

On a motion to quash, Google bears the burden of persuasion, but Mr. Isaacs "must demonstrate that the discovery is relevant." *Natera, Inc.*, 2023 WL 3763808, at *2. He cannot do so. The "instruction letters" accompanying Mr. Isaacs's two January 2024 deposition subpoenas confirm that they seek information about his prior grievance against Google. As Mr. Isaacs put it: "Our last communication, underscoring the need for evidence preservation and a thorough

investigation into the abrupt changes in Google's search algorithm impacting OkCaller.com, has not been adequately addressed." Kramer Decl., Ex. M at 1, Ex. O at 1.

That information is not relevant to the Real Estate Litigation. During the January 9 meet and confer, Mr. Isaacs had no defense for most of the topics listed in his instruction letters. Instead, Mr. Isaacs focused on why OkCaller.com supposedly got "shut off" in Google Search and whether any of his websites might do better in Search in the future. *Id.* ¶ 29. Mr. Isaacs asserted that those two issues are relevant to the Real Estate Litigation because, if OkCaller.com (or another of his websites) sees improved performance in Google Search, then he might make more money, and then the increased income might impact his ability to rely on the real estate contract's force majeure clause. *Id.* ¶ 30.

Mr. Isaacs's explanation for seeking this information about OkCaller.com is refuted by the pleadings in the Real Estate Litigation. To be clear, the force majeure event identified in Mr. Isaacs's complaint in the Real Estate Litigation is "an act of war": the war in Ukraine. *Isaacs*, Dkt. No. 25, ¶ 79. The complaint does not mention a decrease in revenue from OkCaller.com—and nothing in the complaint has anything to do with Google. Even if the complaint somehow put Mr. Isaacs's decreased revenue from OkCaller.com at issue, the two topics Mr. Isaacs identified at meet and confer would still be irrelevant. The reason *why* OkCaller.com saw decreased performance in Search would have no bearing on Mr. Isaacs's argument that his financial circumstances in 2023 (coupled with the war in Ukraine) justified his refusal to close on the sale of his residence. And testimony about the potential future performance of Mr. Isaacs's websites on Google Search in 2024 is simply irrelevant.[3]

In sum, testimony from Google regarding OkCaller.com's performance on Google Search (either in the past or in the future) is irrelevant to the Real Estate Litigation. Mr. Isaacs should not be allowed to use the Southern District of Florida's subpoena power to go on a fishing

---

[3] Indeed, the force majeure clause states that, "if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other." *Isaacs v. Keller Williams Realty, Inc. et al.*, No. 23-cv-81393 (S.D. Fla.), Dkt. No. 29-1, at 19. The contract defines the Closing Date as April 21, 2023. *Id.* at 12. In other words, Mr. Isaacs's ability to invoke the force majeure clause matured by May 21, 2023.

expedition regarding his unrelated grievance against Google.[4] *See, e.g.*, *Elec. Scripting Prods., Inc.*, 2021 WL 3773607, at *4 (quashing subpoenas that sought to "delve into the details of [a non-party's] business and its relationships . . . without even a hint of relevance to" the underlying case's claims or defenses).

### III. Google Seeks This Court's Assistance to Head Off Further Improper Subpoenas

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including" by "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). Google respectfully requests that the Court enter a protective order prohibiting Mr. Isaacs from using the Real Estate Litigation to serve additional subpoenas on Google LLC or Alphabet Inc. without first obtaining leave of court—i.e., upon a showing of good cause for why certain information would be needed in the Real Estate Litigation. *See Roby v. Bloom Roofing Sys., Inc.*, No. 22-10622, 2022 WL 18936134, at *3 (E.D. Mich. Oct. 13, 2022) (ordering party "shall not issue any further subpoenas to" certain third parties "without leave of Court").

In just the last month, Mr. Issacs has issued six subpoenas to Google. He has also used the threat of litigation as a negotiation tactic, suggesting that he will sue Google "like Apple" if Google does not cave in to his demands. Kramer Decl. ¶ 30; *see also id.* Ex. R at 7 ("Unless we receive a comprehensive and prompt response, we are prepared to initiate a civil class action in the Florida Southern District Court by the end of this year."). Google has been left with no option other than to ask this Court for the kind of protective order that has been granted in similar circumstances. *See, e.g.*, *Sheindlin v. Brady*, No. 1:21-cv-01124 (LJL) (SDA), 2021 WL 2075483, at *5 n.6 (S.D.N.Y. May 24, 2021) ("[I]n order to protect non-parties from annoyance,

---

[4] The January 2024 deposition subpoena to Alphabet should be quashed for the additional reason that Alphabet is not the proper entity for a subpoena seeking testimony about a subsidiary's internal operations or relationships with third parties. A substantively identical subpoena has already been served on Google LLC. Further, although the Alphabet subpoena provides that "[r]emote video deposition is allowed," to the extent it commands appearance in Miami, that would be more than 100 miles away from Alphabet and potential witness(es) in Santa Clara County. *See* Fed. R. Civ. P. 45(c)(1).

embarrassment, oppression or undue burden or expense, the Court enters this Protective Order requiring Defendant to first obtain leave of Court before issuing any further subpoenas."); *Zou v. Linde Eng'g N. Am.*, No. 19-CV-554-JED-JFJ, 2020 WL 12833935, at *6 (N.D. Okla. May 19, 2020) (issuing protective order requiring party to obtain "leave of Court prior to issuing any further third-party subpoena," where subpoenaing party's communications to third parties "threaten[ed] legal action" as well as other implicit threats of physical violence).[5]

## CONCLUSION

For the reasons set forth above, Google respectfully requests that the Court quash the subpoenas that Mr. Isaacs has already sent to Google LLC and Alphabet Inc. and enter a protective order prohibiting Mr. Isaacs from serving further subpoenas on Google through the Real Estate Litigation without first obtaining leave to do so.

Respectfully submitted,

Dated: January 17, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Andrew T. Kramer*
    Andrew T. Kramer
    akramer@wsgr.com

Attorneys for Non-Parties
GOOGLE LLC and ALPHABET INC.

---

[5] Possible threats of physical violence were an issue in *Zou*, but Mr. Isaacs has not made those types of threats against Google here.